Anderson, J.
The appellee, John Butcher, exhibited his bill in chancery against G-. W. F. Smith, to enforce his judgment liens upon his real estate, and to ascertain the amount and priorities of the judgment and deed of trust liens upon the same, and to that end sought to have convened all his lien creditors, and prayed an account, and the appointment of a receiver to take charge of his estate. The defendant, G. W. F. Smith, answered the bill, and a commissioner was directed to take an account of said Smith’s real estate, and of his debts binding the same, and report. The commissioner reported the debts, amounting to $145,856.86, including interest to the 1st of July, 1870; and the real estate valued at $70,720.02. To -this report the defendant filed various exceptions, and it was recommitted, the court considering it erroneous. The commissioner, to whom it was recommitted, reported to the court that the defendant had failed to produce any evidence in support of his exceptions, although he had notified him to do so; hut that if all he claimed by his exceptions were allowed, it would not reduce his indebtedness below one hundred and thirty-five thousand dollars. He afterwards made a more formal report, a synopsis of which is given in the record, showing the total of G. W. F. Smith’s own indebtedness to be $110,328.29, and his security debts *149 to be $23,294.22. To this report also exceptions were tiled by tbe said defendant, and the court without passing upon them recommitted the report to the commissioner for further inquiry.
Prior to the foregoing order, to wit: on the 16th of March 1872, an order of the court was entered by the ■clerk in vacation, appointing Joseph H. Kelson, sheriff of Fauquier county, a receiver of the real estate of G. "W. F. Smith (except that portion of which he was appointed receiver in the suit of G. W. F. Smith v. Pat. H. Smith); that is, of the Dan. O’Connell Smith place, the Walter Smith place, the Chapman purchase, and of the several tracts described in the report of 'commissioner Hugh P. Garden, and known as Meadowville and Moore’s patent. All of these lands were the subject' of litigation, in one or the other of four suits then pending in the circuit court of Fauquier; ■i. e., Chapman v. Chapman, McVeigh v. Smith, Jett v. Smith, and the case above named, in which the said Joseph H. Kelson had been previously appointed receiver; and in the case of McVeigh v. Smith, it appears by entry of record that at a circuit court held on the 11th September 1871, Berkeley Ward’s executrix, one of the defendants, by her counsel, filed a notice in writing to the defendant, G. W. F'. Smith, of a motion for the appointment of a receiver of said defendant, G. W. F. Smith, in that cause, and in the ■suit of Butcher v. Smith, and in the suit of Jett v. Smith, which notice was proved, docketed and continued. And in the order entered on the 16th day of March 1872, appointing a receiver, it appears that all the above causes were before the court at the time, •and considered together in connection with the cause of Butcher v. G. W. F. Smith and others, in which the order was made, the parties to which suits, and all *150 other parties having liens upon the lands of the said Smith, having been convened and made defendants in the former suit, and that all the lands which by said order were to go into the hands of the receiver were-involved in this and the foregoing suits, all of them in this, and some of them in one and some in another. And it appears from the decretal order itself appointing the receiver, that the motion was -heard pursuant to notice to G-. W. F. Smith in this cause, of John Ward and Berkeley Ward, a. d. n. e. t. a. of Berkeley Ward, deceased. From this decretal order an appeal was allowed by one of the judges of this court, which raises the question as to the legality of the appointment of a receiver, and is the only question now to be decided.
“The appointment of a receiver is a matter resting in the discretion of the court.” 2 Dan. Ch. Plead, and Prac. 1715. The same eminent writer says (next page): “ The most ordinary cases, in which receivers are granted by the court, are those in which the suit arises out of claims by parties having equitable interests in the property, the subject of litigation. In such cases the court will appoint a receiver, for the purpose of protecting the property, till the question between the parties shall have been determined.”' That is precisely this case. Again, “ a court will grant a receiver, at the instance of a second incumbrancer, in all cases in which the first incumbrancer is-not in possession of the property,” as is the case here. Ibid, p. 1718.
The court is of opinion, under all the circumstances-disclosed by the record, the complication of the matters litigated, the probably protracted litigation, the insufficiency of the property of defendant to pay his debts, and the just claims of the creditors to have the *151 rents and profits applied first to keep down the interest, and then to the reduction of the principal, the case is one eminently proper for a receiver. But it is objected, that the appointment of the sheriff of the county a receiver in vacation was not within the jurisdiction of the court, and could only be done in open court.
The court is of opinion that the power to appoint a receiver is incidental to the power to awai’d an injunction. And as the latter maybe awarded by a judge in vacation, so may the power to appoint a receiver as incidental thereto, in a proper case, be exercised by a judge in vacation. In this case the sheriff of the county was appointed a receiver, which was virtually assigning to him in his capacity of sheriff the duties of a receiver, to be discharged under his responsibilities as sheriff. Ho new bond was required to be given and no special qualification was necessary to be required of him in his character of receiver, but he was responsible for the discharge of the duties assigned him as receiver under his official bond and qualification as sheriff. Judge Baldwin, in Beverley v. Brooke and others, 4 Gratt. 187, 212, held that the appointment of a receiver Í3 in the nature of an injunction. Kerr on Receivers says (page 12): “It operates as an injunction. An order for an injunction is always more or less included in an order for a receiver. It is not necessary if a receiver be appointed, to go on and grant an injunction in terms.”
The power to appoint a receiver is an important and inherent power of a court of equity, and though it should be exercised with caution, it will be readily conceived that occasions may and do occur, when its exercise in vacation may be important to the ends of justice; and under the circumstances we do not think *152 it was improvidently or erroneously exercised in this ease, or that the appellant has any just cause of complaint on that ground.
The court is further of opinion, that there was no error in directing the receiver to collect the rents, which were in arrear and uncollected. It appears from the recitals of the decretal order, appointing a receiver, that the cause came on to be heard in part, upon executions against the said G. W. F. Smith, and the returns thereon, which were a charge upon the rents in arrear. And it was proper that the same should be applied to prevent the swelling of the debt by the accumulation of interest, which already greatly exceeded, prima facie at least, the entire estate of the appellant, real and personal. In Kerr on Receivers, page 13, it is said, “if tenants are in possession of real or leasehold estates over which a receiver is appointed, the order should direct them to attorn, and pay their rents in arrear and the growing rents to the receiver. See also 2 Daniell’s Plead. & Prac. 1737. And accordingly we find in the order for receivers of real estate, the tenants of the estates are directed to attorn, and pay the rents in arrear and growing rents to such receiver. (Seaton’s Forms of Decrees, p. 222.) Upon the whole, the court is of opinion to affirm the decree of the circuit court, with costs.
The other judges concurred in the opinion of Anderson, J.
Decree arrirmed.