# CHARLESTON

MAUCH CHUNK NATIONAL BANK V. SHRADER *et al.*

Submitted March 11, 1914.  Decided May 5, 1914.

1. FRAUDULENT CONVEYANCES—*Bill of Complaint—Requisites.*
    In a bill to charge property in the hands of a wife with debts of her husband, upon the theory of a fraudulent conveyance thereof to her, it is necessary to allege notice to the wife of the husband's fraudulent intent.  (p. 312).

2. SAME—*Bill—Requisites.*
    A bill to set aside a voluntary conveyance or transfer, on no other ground than lack of consideration deemed valuable in law, must show the debt in respect of which relief is sought was contracted before such conveyance or transfer was made.  (p. 313).

3.  APPEAL AND ERROR—*Equity—Disposition of Cause.*

If, in a suit in which the evidence warrants a decree for the plaintiff, a demurrer to the bill is improperly overruled, the cause heard as upon its merits and the bill dismissed, the decree will be reversed and the cause remanded with leave to amend the bill.  (p. 313).

4.  FRAUDULENT CONVEYANCES—*Burden of Proof.*

When a wife purchases land or other property, the burden is on her to prove distinctly, that she paid for it with funds not furnished by her husband.  Evidence that she purchased amounts to nothing, unless it is accompanied with clear and full proof that she paid for it with funds furnished by some one other than her husband.   (p. 314).

5.  EVIDENCE—*Failure to Produce Documents—Badge of Fraud.*

Failure of one charged as a volunteer or fraudulent grantee, to produce and file, as evidence, documents and memoranda which, it is claimed, were used in effecting the alleged purchase, is a badge of fraud in the transaction, if they are within the power of the grantee or transferee.  (p. 315).

Appeal from Circuit Court, Taylor County.

Bill by the Mauch Chunk National Bank against S. W. Shrader and others.  From decree for defendants, plaintiff appeals.

*Reversed and Remanded.*

*P. J. Crogan,* for appellant.

*John L. Hechmer,* for appellees.

POFFENBARGER, JUDGE:

Holding the note of S. W. Shrader for more than $10,000.00, the plaintiff brought suit for the purpose, among others, of subjecting to the satisfaction thereof certain real estate and personal property in the city of Grafton, standing in the name of his wife, Elizabeth M. Shrader, on the ground of fraud between the husband and wife against the creditors of the former, and the trial court, deeming said property not liable, dismissed the bill as to it.

Though the property proceeded against is the residence of the defendants, there was an attachment on the ground of non-residence as to the husband as well as upon the ground of fraud.  Of course the first of these grounds fails.  The

fraud set forth in the affidavit consists of such alleged acts as would constitute a good bill to subject property fraudulently conveyed or transferred; and as the bill charges the same acts and intent, more elaborately and in detail, it is not necessary to notice the affidavit. All the property involved in this appeal admittedly stands in the name of Elizabeth M. Shra-.der. *Prima facie* it is hers, and the plaintiff seeks to set aside conveyances and transfers to her. For such purpose, no attachment is necessary, unless it be to prevent the ostensible owner from disposing of the property to innocent purchasers. Nothing of that kind is suggested by the affidavit or pleadings. The affidavit may, therefore, be disregarded.

The debt originated in July, 1904, and the note was renewed from time to time, the last renewal having been made, Nov. 1st, 1906. The lots proceeded against were conveyed to Elizabeth M. Shrader, by deed dated February 26th, 1904, and the residence built in the years, 1904 and 1905. It was not formally nor actually conveyed to her by her husband. The charge is that the lots were purchased and the building paid for with money of the husband. Part of the purchase money of the lots was derived from the sale of two other lots purchased in the name of the wife some time in the year 1899. This suit was brought in August 1907.

The two grounds of demurrer insisted upon in the brief are, (1) that the debt was contracted after the dates of the conveyance and completion of the house, and (2) that the property is not sufficiently described in the bill. Neither of these positions is well taken. Charging the indebtedness and the fraud and saying the debt is evidenced by a note bearing date Nov. 1st 1906, the bill does not undertake to state the time of its origin. Even though the debt is subsequent, the fraud, if proved, will set aside the conveyance as to it or impose a charge upon the property in favor of the creditor. Moreover, the bill does not show when any of the property was purchased or paid for, and, treated as one to impeach the transaction for fraud, it need not do so. As to the identity of the property, the bill is clearly sufficient. The real estate is described as a certain lot in the city of Grafton standing in the name of Elizabeth M. Shrader, on which Samuel W. Shrader erected ''a fine dwelling house.'' Treated

as one to impeach for fraud, however, the bill is fatally bad for another reason. Nowhere in it is there any averment of the wife's notice of the husband's fraudulent intent. Such a charge is indispensable. *Laidley* v. *Reynolds,* 58 W. Va. 418; *Hawkins* v. *Blake,* 69 W. Va. 190.

Nor is the bill good as one to charge any of the property standing in the name of the wife as having been conveyed, transferred or bestowed without consideration, for it does not show the debt was prior in date to the conveyance, transfer or gift. Sec. 2 of chap. 74 of the Code says a transfer or charge which is not upon consideration deemed valuable in law "shall not upon that account merely be void as to creditors whose debts shall have been contracted * * * after it was made." A subsequent creditor must prove fraudulent intent in a voluntary conveyance, transfer or charge, in order to be relieved from the effect thereof. *Edwards Mfg. Co.* v. *Carr,* 65 W. Va. 673. Under the general rule of pleading, it is necessary to allege all facts that are essential to the right of recovery or relief. Under this statute, priority of the debt is such a fact, wherefore no ground is perceived upon which it can be omitted from the bill.

If the court had sustained the demurrers, as it should have done, the bill would no doubt have been amended and the cause then properly heard on its merits. Instead of doing so, it permitted the litigation to proceed on a defective bill and then dismissed the bill as upon the merits. Of course, there was fault on the part of the plaintiff. It should have filed a good bill. But there was error on the part of the court, which may be regarded as having mislead the plaintiff, for surely a litigant, while standing upon the rulings of the court in his favor, cannot be deemed to have waived the right affected by such ruling. In some instances, invited errors are waived, but this is not one of that class, for the error goes to the very foundation of the cause of action. It is not like an instruction to a jury or evidence erroneously admitted in a jury trial. To deny the right of amendment would often defeat the ends of justice, and the rule is to allow an amendment whenever the furtherance of substantial justice requires it. *Burlew* v. *Quarrier,* 16 W. Va. 108. A plaintiff who has wrongfully submitted his cause on affidavits and met with an adverse

.decree, may have the decree reversed to give him an opportunity to put his evidence in legal form. *Cooper* v. *Bennett,* 70 W. Va. 110. So may a defendant, claiming cross relief. *Hager* v. *Melton,* 66 W. Va. 62. A plaintiff who has taken a decree upon a bad bill with sufficient proof is allowed to amend his bill. No reason why there should not be a right of amendment, under the circumstances disclosed here, is perceived, if the evidence is sufficient to sustain the decree. Whether, if the evidence were insufficient, the error might be deemed harmless and an amendment refused upon that ground, it is not necessary to inquire for it clearly establishes right to the relief sought.

There is no pretense that the wife paid any considerable portion of the cost of the expensive residence in question or of the purchase money of the furniture and automobile, out of her own means. It does not appear that she had any estate of her own, and she did not testify as a witness. She relies upon a claim of donations or loans by the mother and brother of her husband, $8,000.00 or $9,000.00 by the former and about $14,000.00 by the latter. But all the money they are said to have furnished went into the hands of her husband, who appears to have extensive dealings with them on his own account. The brother claims the husband is in debt to him in a large amount, about $52,000.00, subject to a credit for what may be realized upon certain notes he holds. In one part of his testimony, he includes in this debt $12,000.00 he claims to have invested in the wife's property, but later changed his evidence as to that, saying he looked to the property for it, but he took no lien thereon. He does not claim to have bought the property for her, but only to have furnished the money to the husband to invest for the wife. Claiming to have given him two $5,000.00 checks and one $2,000.00 check for that purpose, and being called upon to produce the checks, he produces none corresponding in date and amounts with his testimony or facts otherwise established. He knows nothing of the money alleged to have been furnished by his mother except what he had been told by her and others. The mother did not testify, and the husband was unable to show any of the documents by which he says the donation was represented, certificates of deposit. He gave

no clew by which they could be traced or located for the purpose of verification or refutation of his statements.

This transaction between close relations and highly prejudicial to the rights of creditors may have been such as the wife claims it was, but, if so, she had the evidence to put it beyond question within her reach and failed to produce it. The burden of proof was upon her not only to adduce evidence of it but to prove it clearly, and fully. *Burt* v. *Timmons*, 29 W. Va. 453; *Herzog* v. *Weiler*, 24 W. Va. 199; *Maxwell* v. *Henshaw*, 24 W. Va. 405; *Core* v. *Cunningham*, 27 W. Va. 206; *Stockdale* v. *Harris*, 23 W. Va. 499. Failure to produce documents said to have been used in a transaction charged as fraudulent is a badge of fraud. *Knight* v. *Capito*, 23 W. Va. 639; *Colston* v. *Miller*, 55 W. Va. 490. 502. A great mass of checks, amounting to about $33,000.00 and purporting to be those of the wife, is put in evidence, but only a few of them seem to represent money paid on account of the property in question. They bear on their faces evidence of a husband's bank account kept in his wife's name.

Much of the money paid for the erection and furnishing of the house must have been so laid out and the automobile purchased, after the debt due the plaintiff was contracted; for the house was commenced some time in 1904 and completed in 1905, and the automobile was bought in 1905, while, the debt was created in July, 1904. From the wife's failure to sustain the burden of proof cast upon her by the law, it follows that, as to such improvements as were made upon her real estate, and such personal property as was purchased, after the debt was created, she is a mere volunteer, and such personal property is liable in her hands for the plaintiff's debt, and the same is a charge upon her real estate to the extent of the improvements made thereon by her husband after the debt was contracted, whether there was actual fraud in any of the transactions or not.

The husband became a bankrupt about 1898 or 1899 and received his discharge in 1900 or 1901. Soon afterwards, he was engaged in extensive speculative ventures, largely on credit, and, along with these, property began to accumulate in the name of his wife. She must have known something of his circumstances and have been cognizant of his inability

to make such ample provision for her otherwise than by means of borrowed money and credit, and of his purpose to put this property beyond the reach of his creditors. She does not appear to have been engaged in any business herself or to have had any estate of her own. Under well settled principles, fraud against creditors of the husband and notice thereof to her are readily inferable from the relationship and the other facts and circumstances.

As to both grounds of liability, however, the evidence on the amended bill may be different, demanding a decree other than that which would be entered as it now stands.

The principles and conclusions stated call for reversal of the decree complained of and remand of the cause to the trial court, with leave to the plaintiff to amend its bill.

*Reversed and Remanded.*